**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10435

————————————

WALTER EBBERT,

*Plaintiff-Appellant,*

*versus*

OCEAN CITY WRIGHT FIRE CONTROL DISTRICT,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cv-13532-MCR-ZCB

————————————

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER,
Circuit Judges.

BRASHER, Circuit Judge:

This appeal is from a grant of summary judgment that the
Ocean City Wright Fire Control District did not violate the Amer-

icans with Disabilities Act, 42 U.S.C. § 12112(a), when it fired disabled veteran Walter Ebbert. The question for us is whether any reasonable juror could determine that Ocean City (a) intentionally discriminated against Ebbert based on his disabilities or (b) caused his termination by failing to accommodate those disabilities. Fire Chief Mark Bundrick fired Ebbert without knowing about Ebbert's disabilities and based on his own assessment of Ebbert's work. So no reasonable juror could conclude that Ocean City intentionally discriminated against Ebbert when it fired him. But, because Ocean City allegedly ignored Ebbert's requests for accommodations to help him complete his work, a reasonable juror could conclude that Ocean City caused his termination by failing to accommodate his disabilities. We reverse the district court's contrary conclusion and remand for proceedings consistent with this opinion.

## I.

We start by summarizing the statutory framework. We then turn to the facts and procedural history of this appeal.

This case is about section 12112(a) of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. Section 12112(a) forbids employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). An employer discriminates against such an individual by, among other actions, firing that individual because of his disability or failing to "reasonabl[y] accommodat[e]" his known disability. 42 U.S.C. § 12112(a), (b)(5)(A).

With this framework in mind, we turn to the facts. Because this is a summary judgment appeal, we resolve all factual disputes

in favor of non-movant Ebbert. *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015).

Ebbert has disabilities that stem from his military service and that impact his daily functioning. These disabilities include a traumatic brain injury that causes anxiety and attention issues when Ebbert is under prolonged stress. They also include post-traumatic stress disorder that causes Ebbert to shut down in highly stressful situations.

Former Fire Chief Billy Lord hired Ebbert in 2008 to work as medical chief at Ocean City. Ebbert told Lord about his disabilities when Lord hired him, and Lord agreed to accommodate those disabilities. Lord gave Ebbert extended time, told Ebbert how to prioritize his tasks, or decreased the amount of stress in Ebbert's environment. These accommodations worked. Ebbert was "an excellent employee" who "went above and beyond" even when Lord "put a lot on his plate." Doc. 24-68 at 7–8.

After Lord retired, Bundrick took over as fire chief. Bundrick changed how Ebbert was treated. Although he still extended Ebbert's deadlines, he did not tell Ebbert how to prioritize his tasks. And he created a stressful environment for Ebbert by often changing his expectations for Ebbert's assignments. These actions aggravated Ebbert's disabilities and hurt his productivity at work.

On May 14, 2020, Bundrick assigned Ebbert six tasks that are central to this dispute, which he expected Ebbert to complete in 60 days. Ebbert successfully performed similar tasks for Lord for over

a decade. But Ebbert could not meet Bundrick's expectations for these tasks.

To help complete these tasks, Ebbert requested accommodations from two Ocean City employees. On December 9, 2021, Ebbert requested accommodations from Jennifer Rimes, Ocean City's Human Resources Manager. Ebbert told Rimes that Bundrick and Deputy Chief Jeff Wagner made his environment stressful and aggravated his disabilities by "constantly moving the goalposts" for his tasks and by refusing to provide "a list of priorities." Doc. 24-70 at 14. So Ebbert asked Rimes for "a less stressful environment" and for "a willingness by" Bundrick and Wagner "to answer questions and provide prioritization." *Id.* at 15.

Ebbert then asked Wagner on January 13, 2022, for "more information on [his] additional tasks, including respon[ses] to questions on prioritization and outcomes." *Id.* at 18. But Ocean City never accommodated Ebbert's disabilities.

Ebbert did not complete the six tasks to Bundrick's satisfaction. On March 17, 2022, over a year and a half after the tasks were first due, Bundrick fired Ebbert for failing to complete any of the tasks.

When Bundrick fired Ebbert, Bundrick did not know about his disabilities. Ebbert had not told Bundrick about those disabilities. And no other employee had told Bundrick about them.

Bundrick consulted Wagner before he fired Ebbert, but Bundrick made the ultimate decision. After Bundrick fired Ebbert,

he reassigned five of the six tasks to Ebbert's successor. That successor completed some of the tasks within about ninety days.

We now turn to the procedural history. Ebbert sued Ocean City in state court and alleged, as relevant here, that Ocean City terminated him because of his disabilities. Ocean City removed to federal court and moved for summary judgment. The district court granted summary judgment because: (a) Bundrick did not know about Ebbert's disabilities or act as a "cat's paw" (a puppet) for someone who did; and (b) Ebbert did not establish that Ocean City's failure to accommodate his disabilities caused his termination. Ebbert timely appealed.

## II.

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of non-movant Ebbert. *U.S. Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1342–43 (11th Cir. 2016).

## III.

Ebbert argues that a reasonable juror could conclude that Ocean City (a) intentionally discriminated against him on the basis of his disabilities when it fired him and (b) caused his termination by failing to accommodate his disabilities. We address these issues in turn.

*A.*

We start with whether a reasonable juror could conclude that Ocean City intentionally discriminated against Ebbert on the basis of his disabilities. Ocean City could not intentionally discriminate against Ebbert by firing him unless Bundrick, the employee who decided to fire Ebbert, knew about his disabilities or acted as a "cat's paw" for someone who did. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005); *Hitt v. CSX Transp., Inc.*, 116 F.4th 1309, 1318 (11th Cir. 2024). Because there is no meaningful evidence in the record that Ebbert was fired because of his disabilities, Ebbert's intentional discrimination claim fails.

First, no reasonable juror could conclude that Bundrick knew about Ebbert's disabilities when he decided to fire Ebbert. Ebbert never told Bundrick about his disabilities. Ebbert told Lord, Rimes, and Wagner about those disabilities, but none of those employees told Bundrick. And Bundrick testified that he did not know about Ebbert's disabilities.

Second, no reasonable juror could conclude that Bundrick acted as a "cat's paw" (a puppet) for a third party when he fired Ebbert. A decisionmaker cannot act as a "cat's paw" for a third party if the decisionmaker "independently investigat[es]" the employee. *Hitt*, 116 F.4th at 1318 (citation modified); *see also Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (describing a "cat's paw" as a "rubber stamp"). Wagner was the only third party involved in the decision to terminate Ebbert. Although Wagner told Bundrick that Ebbert failed to complete his tasks from May 14,

2020, the undisputed record reflects that Bundrick personally examined that allegation. Bundrick met with Ebbert multiple times about these tasks. And he testified that "from what [he] saw," Ebbert was not good at his job. Doc. 20-7 at 20. No reasonable juror could conclude that Wagner used Bundrick as a "cat's paw." *See Hitt*, 116 F.4th at 1318.

### B.

Having rejected Ebbert's intentional discrimination claim, we turn to his argument that Ocean City caused his termination by failing to accommodate his disabilities. Ebbert contends that a reasonable juror could reach that conclusion because the record reflects that he was fired "for the very things for which he was seeking accommodations." Appellant Br. at 29. We agree. The causation question for an accommodation claim is whether a failure to accommodate "negatively impacts" the terms or conditions of employment by, among other things, leading to an "adverse employment decision" such as termination. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (citation modified).

A reasonable juror could conclude that a failure to accommodate led to Ebbert's termination for two reasons.

First, a reasonable juror could conclude that Ocean City fired Ebbert for failing to complete any of the six tasks that Bundrick assigned to him in May 2020 by mid-March 2022. Bundrick testified that he fired Ebbert for "[p]oor work performance." Doc. 20-7 at 20. And he explained that Ebbert was "not

performing [his] job" because "none of [those tasks] got completed" in "two years." *Id.* at 18–19.

Second, a reasonable juror could conclude that Ebbert could have completed the tasks if Ocean City had granted his requested accommodations. Ocean City says that Ebbert's requested accommodations would not have "cure[d] his ongoing inability to perform." Appellee Br. at 19. We disagree. Ebbert worked in this position for over ten years, and he had performed some similar tasks for his previous supervisor with the benefit of many of the accommodations he requested of his most recent supervisors. Moreover, we cannot say as a matter of undisputed fact that Ebbert's request for accommodations came too late. Ebbert testified that he requested accommodations over three months before he was fired in March 2022, and his successor completed some of these tasks within three months of when they were assigned.

Ocean City also argues that it gave Ebbert "guidance, extensions of time, and clarification," so the accommodations that Ebbert requested were ineffective. *Id.* Again, we disagree. It is undisputed that Ebbert's supervisors did not enforce the original due date. But the record also includes evidence that Bundrick and Wagner failed to prioritize Ebbert's tasks or to create clear, consistent expectations for his assignments, which were accommodations he requested. Accordingly, a reasonable jury could find that Ocean City negatively impacted Ebbert's conditions of employment by failing to give him the additional time, guidance, information, and

prioritization that he requested or other accommodations that would be identified through an interactive process.

We note that Ocean City does not argue before us that Ebbert failed to request reasonable accommodations, that his requested accommodations were too vague or ill-defined, or that his requested accommodations were too costly or otherwise impractical. So we do not consider those issues. *See United States v. Campbell*, 26 F.4th 860, 873, 880 (11th Cir. 2022) (en banc) (explaining that we do not consider issues that parties do not raise except in "extraordinary circumstances"). Instead, we leave those issues to be addressed on remand.

There is a genuine issue of fact as to whether the failure to accommodate Ebbert negatively impacted his conditions of employment. Accordingly, we reverse the district court's summary judgment on Ebbert's claim for failure to accommodate.

## IV.

We **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

25-10435          WILLIAM PRYOR, C.J., Concurring          1

WILLIAM PRYOR, Chief Judge, Concurring:

I join the majority opinion in full, but I write separately to address another potential ground for summary judgment: Ebbert's failure to demand a specific accommodation and to establish its reasonableness. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). Although Ebbert's employer argued this issue at length in its motion for summary judgment, it did not ask this Court to affirm on this alternative ground after the district court declined to address it. The district court should consider it on remand.

Ebbert made five types of requests to Wagner and Rimes after disclosing his disability: (1) for "a less stressful environment" or "less stress"; (2) for "more time"; (3) for "better guidance," and for "Wagner [to] provide more information on the additional tasks"; (4) for Wagner to "respond[] to questions on prioritization and outcomes"; and (5) for "a willingness by . . . Bundrick and . . . Wagner to answer questions and provide prioritization" of his assignments. These requests are likely not specific enough, for unreasonable accommodations, or not requests at all.

First, Ebbert's request for a less stressful environment or for less stress is likely not specific enough because he did not explain how his employer could achieve those goals. *See Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996) (request for "lessening of the 'pressure' . . . is too indefinite and ambiguous to constitute a

formal request for accommodation under the [Americans with Disabilities Act]"). Ebbert was obliged to explain how his environment could have been made less stressful.

Second, Ebbert's request for additional time without clarifying the length of the extension is also likely not specific enough. *Cf. Frazier-White v. Gee*, 818 F.3d 1249, 1256 (11th Cir. 2016) (request for continued "light-duty status" was unreasonable where employee did not state "how much time she needed or whether any amount of time would be sufficient"); *see also Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 103–04 (1st Cir. 2007) (request "to take 'some time off' without specifying *when* she would need that time off" was insufficiently specific). That accommodation is likely also unreasonable. An "accommodation is reasonable . . . only if it enables the employee to perform the essential functions of [his] job." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997) (citation modified); *see also Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007) (explaining that a proffered accommodation that does not allow a disabled employee to do the job is unreasonable). Ebbert failed to create the training course after two years of trying. He has since admitted that he lacked "the background to succeed" in "develop[ing] the test-taking course." There is no reason to suspect that more time would have allowed him to complete the task.

Third, Ebbert's requests for more information on his tasks and for better guidance are both likely not specific enough and unreasonable. Ebbert discussed these tasks with Wagner and

Bundrick many times. Yet his requests never stated what additional information or guidance Ebbert needed so as to "giv[e] notice that [he] needs a special accommodation." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (citation modified). And because those requests failed to "provide enough information to allow [Ebbert's] employer to understand how the accommodation [he] request[ed] would assist [him]," the accommodations are likely unreasonable. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1330 (11th Cir. 2022) (holding under the Rehabilitation Act); *see also Gaston*, 167 F.3d at 1363 (Rehabilitation Act accommodation precedents are binding in Americans with Disabilities Act accommodation cases). Indeed, they are likely unreasonable twice over because there is no reason to think that, after Ebbert's employer repeatedly explained the same task to him over nearly two years, further guidance would suddenly "enable[] [him] to perform" it. *Willis*, 108 F.3d at 284; *see Holly*, 492 F.3d at 1256.

Fourth, Ebbert's request for Wagner to "respond[] to questions on . . . outcomes" is likely not specific enough because its meaning is indiscernible. And his request for Wagner to "respond[] to questions on prioritization" is likely unreasonable because the Americans with Disabilities Act "does not require an employer to accommodate a disabled employee by making special, individualized training or supervision available in order to shepherd that employee through what is an essential and legitimate requirement of the job." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 867 (7th Cir. 2005).

Finally, Ebbert's request for his supervisors to be "willing[]" to answer questions might not be an accommodation at all because it is not a request that his supervisors do anything. *Accommodation*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The act or an instance of making a change or provision for someone or something; an adaptation or adjustment."); *see Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008) (citing Americans with Disabilities Act precedent to hold that "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the [Fair Housing Act]"); *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017) (faulting plaintiff for "never ask[ing]" his supervisors "for any accommodation" where he expressed only "skepticism" about his ability to perform). But to the extent it is a request for an accommodation, it fails on the same lack of specificity and reasonableness grounds as his requests for more information and guidance and for his supervisors to answer questions about task priorities.

Nevertheless, I agree with my colleagues that the district court should be the first to decide these issues on remand.